ST. LOUIS SOUTHWESTERN RAILWAY COMPANY *v.* TERRAL.

Opinion delivered November 26, 1928.

476

John R. Turney, A. H. Kiskaddon, Gaughan & Sifford, Elbert Godwin and Woolridge & Woolridge, for appellant.

W. R. Donham, for appellee.

HUMPHREYS, J. This is an appeal from a judgment rendered in favor of appellee in the Pulaski Circuit Court, Third Division, for $1,500 on an intervention filed by him to enforce a lien under the attorneys' lien statute, against the proceeds of a judgment rendered in said court in a friendly suit brought by Mrs. J. E. Armstrong, as the administratrix of the estate of her husband, J. E. Armstrong, for the benefit of herself as a widow and the next of kin, against appellant, to recover damages for injuries received by him while in its employ, which caused his death. Appellee predicated his right to a lien on the proceeds of the judgment upon allegations that he had entered into a written contract with Mr. and Mrs. J. E. Armstrong to bring suit; that, after the death of J. E. Armstrong, he obtained the appointment of Mrs. J. E. Armstrong as the administratrix of the estate of her deceased husband in order to bring the suit; and that he subsequently brought the suit for her in her representative capacity against appellant in the circuit court of Calhoun County, which suit was removed to the Federal court at El Dorado, and afterwards dismissed by her

without his consent. The written contract of employment was made an exhibit to the complaint, and is as follows:

"This contract, made and entered into by and between Terral & Cruce, a firm of lawyers of the city of Little Rock, Arkansas, parties of the first part, and J. E. Armstrong and wife, parties of the second part, witnesseth:

"That whereas the said J. E. Armstrong was injured by the Cotton Belt Railroad Company on August 26, 1927, and is desirous of prosecuting his claim for damages against said Cotton Belt Railroad Company for damages arising from said injuries, and that said parties of the second part, by this contract, employs said parties of the first part to represent them and prosecute their claims, and agree to pay them as their fee one-half of the amount recovered, either by litigation or compromise settlement. It being understood that no compromise or settlement shall be made without the consent and approval of said parties of the second part; and parties of the first part, upon their part, hereby agree to prosecute said case through all courts necessary, using their very best skill and ability, for a fee as above stated.

"Witness our hands and seals on this, the 7th day of September, 1927.

"Terral & Cruce,
"Parties of the first part.
"J. E. Armstrong,
"Mrs. J. E. Armstrong,
"Parties of the second part."

On motion of appellant, C. M. Cruce, who signed the contract with appellee, was made a party to the intervention, and prayed and filed a disclaimer alleging that he was not a lawyer but merely a law student in Terral's office, and that the contract was signed "Terral & Cruce" solely at the instance of J. E. Armstrong, who desired the contract drawn in that manner, as Cruce was a friend of his and was familiar with the investigation of Armstrong's injury. He was dismissed as a party, and the cause proceeded thereafter in the name of Tom J. Terral as intervener.

Tom J. Terral testified that, after his employment, he made investigations and gathered facts preparatory to bringing the suit, and after the death of J. E. Armstrong he carried on negotiations with appellant's claim agent in an effort to make a settlement with the knowledge of Mrs. Armstrong; that she and members of her family came to his office and discussed the case with him; that, after a failure to settle with the claim agent, he informed Mrs. Armstrong it would be necessary to administer upon the estate of her husband to enable him to file a suit, and advised that she take out letters of administration; that she consented, and he obtained her appointment as administratrix for the purpose of bringing the suit; that he thereafter filed a suit for her in her representative capacity in the circuit court of Calhoun County against appellant to recover $60,000 damages on account of the injuries received by her husband while in its employ, which resulted in his death; that, on motion of appellant, the suit was transferred to the Federal court at El Dorado, and during the pendency thereof he learned that a settlement had been effected, and filed an intervention for his fee, praying that same be declared a lien upon the proceeds of the settlement agreed upon, but that his intervention was dismissed for the want of jurisdiction, and without prejudice to him; that on the afternoon of November 22, 1927, he received a letter from Mrs. Armstrong, discharging him, upon the alleged ground that she had no authority, as administratrix of the estate of her husband, to employ a lawyer to represent her or his estate in a suit to recover damages for the injuries received by him while in appellant's employ, and that the contract of employment signed by her had no legal value or in any way bound her as administratrix of the estate of her deceased husband.

Mrs. Armstrong testified that, although she knew Mr. Terral was handling the case after her husband died, she never employed him to do so, and when he had her appointed administratrix he informed her that it was for the purpose of administering on her husband's estate,

and did not tell her that it was for the purpose of bringing suit; that she never authorized him to bring suit, and did not know that he had brought a suit until after she wrote him a letter informing him that she was not bound by the contract of employment signed by herself and husband, and requesting him to return his copy of the contract to her.

The record reflects that the letter she wrote to Terral was dictated by her pastor, Dr. Glenn E. Green, with the assistance of the claim agents of appellant company and the Missouri Pacific Railway Company, all of whom participated in the settlement or compromise of the claim with Mrs. Armstrong, without consultation with Terral. Pursuant to the compromise agreement she received $3,000 for the benefit of herself as widow and next of kin, and $575 for the benefit of the estate. She afterwards dismissed the suit pending in the Federal court, and brought this suit for the purpose of effectuating the settlement she had made with appellant.

The first contention of appellant for a reversal of the judgment is that Mrs. Armstrong's signature to the written contract of employment was mere surplusage, and, as she had no interest in the subject-matter of litigation until after the death of her husband, the contract was a nullity as far as she was individually concerned, and did not and could not bind her in capacity as administratrix, because she was appointed administratrix some time after the death of her husband. It may be said, in passing, that she had a contingent interest in the subject-matter of the litigation at the time she signed the contract as widow, in case her husband should die as a result of the injury. But, be that as it may, Mrs. Armstrong certainly adopted the contract as her own after the death of her husband, if the testimony of Terral is accepted as true. The trial court accepted his testimony as true, and determined the disputed issue of fact with reference to a subsequent ratification of the contract against appellant, and, as the finding was based upon substantial evidence, the verdict cannot be disturbed by this court on appeal.

Terral testified that Mrs. Armstrong and other members of the family visited his office after the death of J. E. Armstrong and consulted with him with reference to the case during the negotiations with appellant for a settlement, and, after failing to compromise the claim, she agreed to accept the appointment as administratrix of her husband's estate in order to enable him to file suit against appellant for her, in her representative capacity, to recover damages for the injury received by her husband resulting in his death, and that, with her full knowledge, he subsequently brought the suit. This conduct and these acts on her part necessarily led appellee to believe that she had adopted and made the contract her own. Her conduct and acts are inexplicable upon any other theory than that of an adoption by her of the contract.

What we have said with reference to the effect of her conduct and acts after the death of her husband necessarily disposes of appellant's second contention for a reversal of the judgment, which is that there was no ratification by Mrs. Armstrong of appellee's action in instituting suit on her behalf in the Calhoun Circuit Court.

Appellant's third contention for a reversal of the judgment is that the contract was void *ab initio,* and not subject to ratification. This contention is based upon the fact that the contract was signed by Cruce, in connection with Terral, who was not licensed to practice law. By reference to the contract it will be seen that it was signed by ''Terral & Cruce'' as parties of the first part. The first paragraph of the contract is as follows:

''This contract made, and entered into by and between Terral & Cruce, a firm of lawyers of the city of Little Rock, Arkansas, parties of the first part, and J. E. Armstrong and wife, parties of the second part, witnesseth.''

Appellant cites in support of its contention the case of *McIver* v. *Clark,* 69 Miss. 408, 10 So. 581. This is a Mississippi case, and in that State a privilege tax is imposed by statute upon each person practicing law. The

statute imposing the license tax contains the following provision: "All contracts made with any person who shall violate this act, in reference to the business carried on in disregard of this law, shall be null and void." The court interpreted the statute as invalidating the contract signed by a firm of lawyers when one of them had paid his license tax and the other had not. There is no statute in our State nullifying a contract made by a lawyer who has not paid his license tax. The case cited is not applicable to the facts in the instant case.

Continuing, appellant argues that a void contract cannot be ratified. Three cases are cited in support of this position. *Texarkana* v. *Friedell*, 82 Ark. 531, 102 S. W. 374; *First National Bank of Waldron* v. *Whisenhunt*, 94 Ark. 583, 127 S. W. 968; *Dell Special School District* v. *Johnson*, 129 Ark. 211, 195 S. W. 373. These cases all turn upon a lack of power to make the contract in the beginning. In the instant case there was no lack of power to make the contract. Such a contract as this is not prohibited and condemned as null and void by statute.

Appellant's last contention for a reversal of the judgment is couched in the following language:

"Proof as to the alleged ratification of the contract was not competent, in view of plaintiff's intervention, in which he sought to recover and fix the statutory attorney's lien on the judgment rendered in the Pulaski Circuit Court, solely on the existence of the written contract introduced in evidence."

It is true that the written contract was attached to the intervention as an exhibit, but the conduct and acts of Mrs. Armstrong after her husband's death with reference to the case were alleged in the intervention. We do not understand that appellee relied solely upon the written contract as a basis for recovery, but relied upon the conduct and acts of Mrs. Armstrong after the death of her husband as a ratification or adoption of the written contract as her own. We think the proof of ratification was competent.

No error appearing, the judgment is affirmed.