ARKANSAS FOUNDRY COMPANY *v.* POE.

Opinion delivered April 7, 1930.

498

*Buzbee, Pugh & Harrison,* for appellant.

*Sam T. Poe, Tom Poe* and *McDonald Poe,* for appellee.

HART, C. J., (after stating the facts). It is first insisted that the judgment of the probate court removing B. C. Barnes as administrator of the estate of Orby King

and substituting in his place H. H. Morris, and abrogating the contract whereby B. C. Barnes, as administrator, had made a contract with Sam T. and Tom Poe to file and prosecute a damage suit against the Arkansas Foundry Company was correct, and that Sam T. and Tom Poe no longer had any right to represent the plaintiff in the damage suit.

We cannot agree with counsel in this contention. B. C. Barnes was duly appointed administrator of the estate of Orby King, and his contract with Sam T. and Tom Poe was approved by the probate court. Sam T. Poe then went to the State of Tennessee to see Jimmie King who was the father of Orby King, and his sole heir at law about the matter. They both testified in positive terms that Jimmie King ratified the appointment of Barnes and his contract with the appellees. Their testimony was corroborated by that of the attorney of Jimmie King in the State of Tennessee. He stated that Poe and Barnes came to his office with Jimmie King and told him all about the appointment of Barnes as administrator, and the suit which Poe had brought for damages. This attorney approved of the suit and advised Jimmie King and his brother to go to the State of Arkansas to see about the prosecution of the suit. According to the testimony of Tom Poe, after they arrived here, they ratified the appointment of Barnes as administrator and his contract with them to prosecute the damage suit.

It is true that this testimony is contradicted by that of Jimmie and Quinton King, his brother, who both testified that they did not know of the appointment of Barnes as administrator, and his contract employing Sam T. and Tom Poe to represent him in the damage suit. Their testimony, however, is inconsistent in itself. There could be no reasonable ground upon which to base the action of Barnes and Poe in going to the State of Tennessee and consulting him about the prosecution of the damage suit if they were not in some way interested in it. Jimmie King was the father of Orby King, and the sole

beneficiary of his estate. He was entitled to all of the proceeds of the suit, because there were no creditors of his son's estate. Then, too, the testimony of Jimmie King is weakened on cross-examination. He testified that he did not remember Barnes and Poe saying anything about the appointment of Barnes as administrator and Poe as his attorney when they came to Tennessee to see him. We think the evidence in the record clearly shows that Jimmie King ratified the appointment of Barnes as administrator of his son's estate and Barnes' employment of attorneys to prosecute the damage suit. Therefore, the decision of the circuit court on this branch of the case was correct. *St. Louis Southwestern Ry. Co.* v. *Terral*, 178 Ark. 475, 11 S. W. (2d) 763.

The undisputed evidence shows that Jimmie King was to recover the sum of $2,500 for signing a release of his claim for damages against the Arkansas Foundry Company, and that the company agreed to pay in addition whatever sum he would be required to pay Sam T. and Tom Poe or to Barnes. In other words, the effect of the evidence is that the defendant in the damage suit settled the case by paying Jimmie King the sum of $2,500, and also agreeing to pay his attorneys in the case.

This brings us to a consideration of the amount the attorneys were entitled to under their contract. We have copied that part of the contract in our statement of facts and need not repeat it here. B. C. Barnes, as administrator, agreed to pay Sam T. and Tom Poe fifty per cent. of all sums collected from the Arkansas Foundry Company or from any other person for it by reason of the claim for damages whether by suit, compromise, or otherwise.

In *Louisville, Evansville & St. Louis Rd. Co.* v. *Wilson*, 138 U. S. 501, 11 S. Ct. 405, the court quoted with approval the following: "The principle has long been established that a party should not run away with the fruits of a cause without satisfying the legal demands of his attor-

neys by whose industry and expense these fruits were obtained.''

Counsel for appellant claim that the case falls within the rule announced in *St. L. I. M. & So. Ry. Co.* v. *Hays & Ward,* 128 Ark. 471, 195 S. W. 28, and cases cited. In that case it was held that a plaintiff has the right to settle a suit; but in making the settlement he must take into consideration that his attorney has a lien upon the cause of action, and under our statute may enforce it so that the plaintiff may not settle and deprive him of his rights under the contract with his client. In that case the client settled the suit without the consent of his attorneys, but there was no agreement upon the part of the railroad company to pay in addition the attorney's fee. Hence, the court held that the attorneys were only entitled to recover one-half of the amount that the client had received in the compromise settlement, because that was the amount of attorney's fee to which they were entitled under their contract.

Here the facts on this point are essentially different. We have a case where the defendant settled by paying the client a sum of money, and in addition agreeing with him that he would also pay his attorneys. On this question the cases are in conflict. All of them recognize the rule to be that the amount for which the parties agreed in good faith to settle is binding on the attorney, but they differ as to what this amount is. Case notes to 3 A. L. R. 481, and 40 A. L. R., p. 1533.

The leading case relied upon by appellant is *Proctor* v. *Louisville, Nashville Rd. Co.,* 156 Ky. 465, 161 S. W. 518, 3 A. L. R. 461. In that case, it was held that an amount which an attorney having a contract for a contingent fee on the percentage basis may recover in cases like this is to be computed as though the amount paid by way of compensation constituted the entire recovery. The court said that the amount the attorney was entitled to receive was absolutely fixed by the amount paid to the client. It was further said that, if the attorney

received one-half of the amount his client received, it does not concern him whether he was paid that amount by his client or by any other person.

The leading case on the other side of the question is *Johnson* v. *Great Northern Rd. Co.*, 128 Minn. 365, 151 N. W. 125, L. R. A. 1917B, 1140. It was there said that the agreement to pay the attorney was part of his settlement, and that the amount to be paid the client was not the whole of the settlement but only the client's part thereof. Therefore, it was held that the whole amount of the settlement on which the attorney's percentage is to be computed is that amount bearing such a proportion to the amount paid to the client as the whole bears to the portion representing the client's part. We think the rule there announced is in accord with the better reasoning.

In the case at bar, the defendant in the damage suit settled with the plaintiff for the sum of $2,500 with the agreement at the time that the company would pay B. C. Barnes, administrator, or Sam T. and Tom Poe, his attorneys, under the terms of their contract which had been approved by the probate court. The defendant had notice of this contract and the rights of the attorneys under it and expressly agreed to settle with the plaintiff and pay the attorneys whatever they were entitled to under the contract. Jimmie King, the beneficiary under the contract, did not attempt to settle the whole liability against the defendant. As we have already seen, the defendant knew that the attorneys were entitled to fifty per cent. of all sums collected from the defendant, and the release recites that it is executed in consideration of the payment of $2,500 to Jimmie King, and also releases all claims that he may have as the father and sole heir at law of the said Orby King, deceased, on account of the injuries which led to the death of Orby King, while he was working for the defendant. In addition, the defendant agreed to pay whatever amount was due the attorneys. The defendant knew that the client and the attorneys both had rights under their contract; and,

when it settled with the client for a stipulated sum to be paid him for his release, it also became liable for a like amount to the attorneys. Neither party was mistaken as to the facts of the case. The defendant knew the terms of the contract, and cannot be heard to interpose its erroneous interpretation of it as a defense to this action. The contract required that the fee should equal the amount of the client's share of the proceeds of any settlement, and it was evidently the intention of the parties that each receive an equal amount, so that when the defendant settled with the client for $2,500 and agreed to pay the attorneys' fees, it must be deemed to have agreed to pay them the same amount which it had paid the client. Therefore, the judgment will be affirmed.