BUCHANAN *v.* BEIRNE LUMBER COMPANY.

4-5355                                    124 S. W. 2d 813

Opinion delivered February 6, 1939.

*McRae & Tompkins,* for appellant.

*J. H. Lookadoo,* for appellee.

McHANEY, J. Appellant, Dr. A. S. Buchanan, is a physician and surgeon, engaged in the practice of his profession in the City of Prescott, and is the sole owner of the Cora Donnell Hospital in said city. Appellant, Miss R. C. Miller, is a registered nurse in said hospital.

On November 15, 1935, one J. N. Henley, who was, and for sometime theretofore had been, in the employ of appellee, lumber company, as a truck driver, was very seriously and horribly injured by reason of a collision between the truck he was driving for appellee and a truck driven by appellee, Rhodes. He was taken to the above named hospital, and was there treated for a long period of time by appellants as physician and nurse, and the lumber company paid the hospital, medical and nurse bills from time to time. On December 10, 1936, Henley filed suit against appellees to recover damages in the sum of $85,000 for his injuries, alleging as negligence on the part of the lumber company that it furnished him a car with defective brakes, and that Rhodes was negligent in turning his truck to the left as he, Henley, was attempting to pass, without giving any signal that he would do so. Shortly after this suit was filed the lumber company notified Dr. Buchanan that it would not be responsible for any further bills for service rendered Henley. On June 16, 1937, while said suit was still pending, Dr. Buchanan filed a claim of lien for himself and the hospital under the provisions of act 130 of 1933, in the sum of $923, and two days later, on June 18, Miss Miller filed a claim of lien under the same act in the sum of $346 for nurse hire. Thereafter, on January 3, 1938, while said suit was pending, and without notice to appellants, the lumber company settled the damage suit with Henley for $4,000 without paying appellants' claims and without securing any release thereof from them, and secured a dismissal of said suit. Immediately on learning of the settlement and dismissal of said suit, appel-

lants filed their interventions, praying that the order of dismissal be set aside as to their claims of liens and praying judgment against appellees for said amounts. The court set aside its order of dismissal and set the case for trial. On a trial thereof and at the conclusion of all the evidence, the court instructed a verdict for appellees, on the ground that Henley assumed the risk of driving the truck with defective brakes and could not have recovered from the lumber company because of that fact, and, therefore, appellants could not recover against it despite the $4,000 settlement made by it with Henley. In other words the court required appellants to assume the burden of trying Henley's case and to establish his right to recover, and having determined from the evidence that Henley could not have recovered had he tried his case, appellants could have no satisfaction, regardless of the settlement for $4,000. The case is here on appeal.

No defense was made to the action on account of any failure of appellants to comply with all the provisions of said act 130 of 1933, in the matter of properly filing claims of lien in apt time or in giving notice thereof as provided therein. The defense was and is that in order to recover, appellants must show that the lumber company was a "tortfeasor," as defined in said act. Sub-section (4) of § 1 defines that term as "a person through whose fault or neglect a person is injured." Section 2 provides: "On compliance with the provisions of this act, a practitioner, a nurse, and a hospital and each of them shall have a lien," (a) for the value of services rendered by them to a patient, "for the relief and cure of an injury suffered through the fault or neglect of someone other than the patient," (b) "on any claim, right of action, and money to which the patient is entitled because of that injury, and to costs and attorneys' fees incurred in enforcing that lien."

Section 5 of said act reads in part as follows: "A tortfeasor and an insurer, and each of them, who has been notified, as authorized by this act, of a claim of lien against such tortfeasor or insurer by reason of an in-

jury caused by the fault or neglect of a tortfeasor, shall not, within sixty (60) days after the service of such notice, nor at any time after a copy of that notice has been recorded in the office of the clerk of the circuit court of the county in which the professional, nursing, or hospital service was rendered, pay to the patient, either directly or indirectly, any money or deliver to him, either directly or indirectly, anything of value, in settlement or part settlement of the patient's claim or right of action, without having previously

"(a) paid to the practitioner, nurse, or hospital that gave notice of such claim of lien, the amount claimed under it; or

"(b) received a written release of the claim of lien from the practitioner, nurse, or hospital that gave notice of it, except as otherwise authorized by this act.

"A tortfeasor and an insurer, and either of them, that has been notified by a practitioner, nurse, or hospital of a claim of lien under this act, and who, directly or indirectly, otherwise than as is authorized by this act, pays to the patient any money or delivers to him anything of value as a settlement or compromise of the patient's claim arising out of the injury done to him, shall be liable to such practitioner, nurse, or hospital for the money value of the service rendered by such practitioner, nurse, or hospital, in an amount not in excess of the amount to which the patient was entitled from the tortfeasor or insurer because of the injury."

If the lumber company is a "tortfeasor" within the meaning of this act, then it clearly violated the provisions of this section, because it is undisputed that it paid Henley $4,000 in settlement of his claim against it, "without having previously" paid to appellants the amount of their claims; or without having received from them a written release of the claims of lien filed by them. By so doing, it became amenable to the penalty imposed by the last quoted paragraph of said section, and that is, it became liable to appellants "for the money value of the service rendered, in an amount not in excess of the

amount to which the patient was entitled from the tort-feasor because of the injury.''

We think the court misconstrued this act when it required appellants to assume the burden of proving a case of liability against appellees, after a settlement had been made, or at all. If no settlement had been made and if the case had been brought to trial, then the burden of making a case would have been on the plaintiff Henley, and if he had failed, then the lien of appellants would have failed also. But by compromising and paying $4,000 to Henley, it admitted in substance and effect that it was in the wrong, was a ''tortfeasor,'' and cannot now be heard to say to the contrary, even though it took a release absolving it from blame. That term, as used in the act, means the alleged wrongdoer. It is a descriptive term referring to the person or corporation charged with negligence, not that the lien claimant must prove that the alleged ''tortfeasor'' was one in fact, where a settlement has been effected. The act clearly gives a lien to appellants ''on any claim, right of action, and money to which the patient is entitled because of that injury, and to costs and attorneys' fees incurred in enforcing that lien.''

Now, it may be that Henley was not legally entitled to the $4,000 paid him, but the lumber company cannot be heard to say he was not, because it voluntarily paid it to him in compromise of a claim of $85,000, and appellants cannot be compelled to litigate that question. The remedial object of the statute was to prevent the very thing that has occurred in this case. It was enacted for the very humane purpose of encouraging physicians, hospitals and nurses to extend their services and facilities to indigent persons who suffer personal injuries through the negligence of another, by providing the best security available to assure compensation for services and facilities. As we view it, there is no burden placed on industry, nor does it tend to discourage settlements. The alleged ''tortfeasor'' may defend the action in the courts. If there is no liability to the plaintiff, the lien claimant loses his claim for services. If the case is

compromised, all the "tortfeasor" has to do is either to pay the lien claimant, or get a written release of the lien claim from him.

The act under consideration, although more elaborate, is somewhat analogous to the attorney's lien act, same being act 293 of 1909 as amended by act 326 of 1937, digested as § 668 of Pope's Digest. In *St. L., I. M. & S. Ry. Co.* v. *Hays & Ward,* 128 Ark. 471, 195 S. W. 28, it was held, among other things, that: "The section of our statute giving the lien to an attorney is remedial in character, and must be liberally construed to effectuate the purpose sought to be accomplished by its enactment." The same thing is true here. The learned trial court gave the act a very strict and strained construction, and in doing so fell into error.

Numerous cases might be cited construing the attorney's lien act before amendment, other than the Hays & Ward Case, *supra,* some of them are S*izer* v. *Midland Valley R. R. Co.,* 141 Ark. 369, 217 S. W. 6; *Williams* v. *New England Security Co.,* 170 Ark. 139, 278 S. W. 961; *Arkansas Foundry Co.* v. *Poe,* 181 Ark. 497, 26 S. W. 2d 584; *Warren & Saline River R. R. Co.* v. *Wilson,* 185 Ark. 1063, 50 S. W. 2d 476. In *St. L. I. M. & S. Ry. Co.* v. *Kirtley & Gulley,* 120 Ark. 389, 179 S. W. 648, it was said: "This necessarily involves the reciprocal right of the attorney to follow the proceeds of the settlement, and, if they have been paid over to the client, to insist that his share be ascertained and paid to him, for the defendant is estopped from saying that with notice of the lien he parted with the entire fund." One of the differences between the two acts is, that act 130 of 1933 creates a right of lien in personal injury cases only, whereas the attorney's lien act is not so limited. See *McDonald* v. *Norton,* 123 Ark. 473, 185 S. W. 791, 1199. Both acts are quite similar in purpose. Each gives to the lien claimant or lienor an absolute lien upon the patient's or client's cause of action. As said in the Sizer Case, *supra,* with reference to the attorney's lien act, "Under it the lien which the statute gives the attorney follows the cause of action throughout without interruption and attaches to that

in which the right of action is merged.'' The lien so given under each act cannot be evaded by a settlement. The lienee must take notice of the lien and if he settles the lawsuit without protecting the lienor, he does so at his peril. A conclusive presumption arises in case of settlement with notice of the lien that the lienee has retained in his hands a sufficient sum to satisfy the lien. It was so held in the Kirtley & Gulley Case, *supra*.

The judgment is, therefore, reversed and the cause remanded with directions to establish and enforce the lien of appellants for the amount of their respective claims, there being no dispute about their correctness and reasonableness, and to fix a reasonable fee for appellant's attorneys, in accordance with the terms of said act. It is so ordered.