MINDY L. KALISEK, APPELLANT, V. ALVIN ABRAMSON,
DIRECTOR OF THE DEPARTMENT OF MOTOR VEHICLES,
STATE OF NEBRASKA, APPELLEE.

599 N.W. 2d 834

Filed August 20, 1999.   No. S-98-468.

William G. Line for appellant.

Don Stenberg, Attorney General, and Kristine D. Brenneis for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

Mindy L. Kalisek appeals the order of the district court for Dodge County affirming the order of the director of the Department of Motor Vehicles (DMV), Alvin Abramson, revoking Kalisek's operator's license pursuant to the administrative license revocation (ALR) provisions, Neb. Rev. Stat. §§ 60-6,205 through 60-6,208 (Reissue 1993 & Cum. Supp. 1996). We granted Kalisek's petition to bypass the Nebraska Court of Appeals, and we now affirm.

## BACKGROUND

On December 23, 1997, Kalisek was stopped by Fremont police officers John Headid and Michaela Kubat for failing to signal before making a lane change. When the officers approached Kalisek, Kubat smelled the odor of alcohol emitting from Kalisek and noticed that her speech was slurred and mumbled. Headid also smelled the odor of alcohol and noticed that Kalisek's eyes were bloodshot and watery. Kalisek admitted to both officers that she had been drinking. The officers requested Kalisek to perform field sobriety tests, and her performance on these tests indicated signs of impairment. Kubat also administered a preliminary breath test, which Kalisek failed. Kalisek was arrested for driving under the influence of alcohol (DUI), pursuant to Neb. Rev. Stat. § 60-6,196 (Reissue 1993), and was transported to the Fremont Police Department. At the police department, Kalisek was asked to submit to a chemical test of her breath, to which she complied, and the results of the test indicated that she had a breath alcohol content of .196 grams of alcohol per 210 liters of breath. Pursuant to § 60-6,205, Kubat prepared a "Notice/Sworn Report/Temporary License" (sworn report) form and Kubat and Headid both signed it in the presence of a notary public. Kubat read Kalisek the verbal notice of license revocation and gave her a copy of the sworn report and a "Petition for Administrative Hearing" form with a preaddressed envelope. The DMV received the sworn report; Kalisek filed a petition for hearing with the DMV, and a hearing was held pursuant to a notice of hearing mailed to Kalisek. Based on the hearing, the director of the DMV found that Kubat and Headid had probable cause to believe Kalisek was operating a motor vehicle in violation of § 60-6,196, and suspended Kalisek's driver's license for 90 days effective January 22, 1998. Kalisek appealed the director's decision to the district court, which stayed the revocation of Kalisek's license pending final resolution of the matter. The district court ultimately affirmed the director's decision, lifted the stay, and reinstated the revocation of Kalisek's driver's license.

## ASSIGNMENTS OF ERROR

Kalisek alleges that the trial court erred in not finding (1) that § 60-6,196 was in violation of Neb. Const. art. II, § 1, the sepa-

ration of powers clause, and Neb. Const. art. IV, § 13, the commutation clause, or (2) that § 60-6,205 was in violation of Neb. Const. art. III, § 18, the prohibition against special legislation clause.

## STANDARD OF REVIEW

■■■ Whether a statute is constitutional is a question of law, with respect to which an appellate court has an obligation to reach a conclusion independent of that of the trial court. *State v. Cushman,* 256 Neb. 335, 589 N.W.2d 533 (1999); *State v. Divis,* 256 Neb. 328, 589 N.W.2d 537 (1999). A statute is presumed to be constitutional, and all reasonable doubts will be resolved in favor of its constitutionality. *Schindler v. Department of Motor Vehicles,* 256 Neb. 782, 593 N.W.2d 295 (1999).

## ANALYSIS

### SEPARATION OF POWERS

Kalisek alleges that § 60-6,196 violates the separation of powers clause and the commutation clause because § 60-6,196(8) provides:

Any person who has been convicted of driving while intoxicated for the first time or any person convicted of driving while intoxicated who has never been assessed for alcohol abuse shall, during a presentence evaluation, submit to and participate in an alcohol assessment. . . . At the time of sentencing, the judge, having reviewed the assessment results, may then order the convicted person to follow through on the alcohol assessment results at the convicted person's expense *in lieu of or in addition to any penalties deemed necessary.*

(Emphasis supplied.)

Kalisek argues that this provision represents an unconstitutional delegation of legislative authority, alleging that it gives commutation powers to the judiciary.

■■■ Section 60-6,196 is a criminal DUI statute and is not part of the statutory scheme for an ALR. The ALR statutes are not criminal proceedings, but are civil proceedings that may result in a civil sanction. See *State v. Howell,* 254 Neb. 247, 575 N.W.2d 861 (1998). The ALR statutes and the criminal statutes

present clearly distinct mechanisms for enforcement, adjudication, and appeal. *State v. Cushman, supra.* Kalisek is trying to attack a criminal statute, not in an appeal from her criminal conviction, but instead in an appeal from an ALR.

We note that Kalisek raised this issue on appeal from her criminal conviction, case No. S-98-816, which was summarily affirmed on February 10, 1999, pursuant to Neb. Ct. R. of Prac. 7A(1) (rev. 1996), based upon our decision in *State v. Divis, supra,* and *State v. Cushman, supra.*

█ Standing to challenge the constitutionality of a statute under the federal or state Constitution depends upon whether one is, or is about to be, adversely affected by the language in question; to establish standing, the contestant must show that as a consequence of the alleged unconstitutionality, the contestant is, or is about to be, deprived of a protected right. *State v. Cushman, supra.*

While the ALR provisions and criminal prohibition against DUI relate to the same subject matter, the validity of § 60-6,196 is completely irrelevant to the instant case, which presents Kalisek's appeal from her license revocation pursuant to § 60-6,205, an ALR provision. The record in this case does not demonstrate that the operation of § 60-6,196 is depriving or is about to deprive Kalisek of any constitutionally protected right. It is clear that Kalisek lacks standing to challenge § 60-6,196 in her present appeal.

### SPECIAL LEGISLATION

Kalisek next claims that § 60-6,205 violates the prohibition on special legislation found in Neb. Const. art. III, § 18, because it creates an unconstitutional classification between those who submit to urine tests and those who submit to breath and blood tests pursuant to that statute. Section 60-6,196(1) provides:

> It shall be unlawful for any person to operate or be in the actual physical control of any motor vehicle:
>
> (a) While under the influence of alcoholic liquor or of any drug;
>
> (b) When such person has a concentration of ten-hundredths of one gram or more by weight of alcohol per one hundred milliliters of his or her blood; or

(c) When such person has a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his or her breath.

Neb. Rev. Stat. § 60-6,197(4) (Cum. Supp. 1996) provides:

Any person arrested as provided in this section may, upon the direction of a peace officer, be required to submit to *a chemical test or tests of his or her blood, breath, or urine* for a determination of the concentration of *alcohol or* the presence of *drugs.* If the chemical test discloses the presence of *a concentration of alcohol in violation of subsection (1) of section 60-6,196,* the person shall be subject to the administrative revocation procedures provided in sections 60-6,205 to 60-6,208 . . . .

(Emphasis supplied.)

It is further provided in § 60-6,205(3):

If a person arrested pursuant to section 60-6,197 submits to the *chemical test of blood or breath* required by that section and the test discloses the presence of *alcohol in any of the concentrations specified in section 60-6,196,* the arresting peace officer, as agent for the director [of the DMV], shall verbally serve notice to the arrested person of the intention to immediately impound and revoke the operator's license of such person and that the revocation will be automatic thirty days after the date of arrest unless a petition for hearing is filed within ten days . . . . The arresting peace officer shall immediately forward to the director a sworn report stating (a) that the person was validly arrested pursuant to section 60-6,197 and the reasons for such arrest, (b) that the person was requested to submit to the required test, and (c) that the person submitted to a test, the type of test to which he or she submitted, and that such test revealed the presence of alcohol in a concentration specified in section 60-6,196.

(Emphasis supplied.)

Kalisek argues that § 60-6,205(3) treats persons who are found to be driving with prohibited concentrations of alcohol in the blood or breath differently from persons with a prohibited concentration of alcohol in the urine because the statute requires that results of only blood and breath tests be submitted to the

director of the DMV, and there is no such requirement for results of urine tests. In so arguing, Kalisek misunderstands the operation of the criminal DUI statutes, Neb. Rev. Stat. §§ 60-6,196 to 60-6,204 (Reissue 1993 & Cum. Supp. 1996), in conjunction with the ALR provisions found at §§ 60-6,205 to 60-6,208. The DUI statutes provide criminal penalties for those driving under the influence of either alcohol or drugs, while the ALR provisions only revoke the licenses of those driving under the influence of alcohol. See § 60-6,205(1). Furthermore, as explained below, chemical tests of blood and breath are used to test for concentrations of alcohol or drugs in the body. Now, chemical tests of urine are not used to test for concentrations of alcohol in the body, but are used to test only for the presence of drugs.

Section 60-6,197(4) states that only when the chemical test discloses the presence of a concentration of alcohol in violation of § 60-6,196(1) will the person be subject to the ALR procedures. The only concentrations of alcohol listed in § 60-6,196(1) include a concentration of .10 of 1 gram or more by weight of alcohol per 100 milliliters of his or her *blood*, and a concentration of .10 of 1 gram or more by weight of alcohol per 210 liters of his or her *breath*. There is no urine concentration listed in § 60-6,196(1), and therefore, a person who submits to a urine test is not subject to the ALR procedures.

Previously, § 60-6,196(1) did contain a provision for a concentration of alcohol in urine. However, in 1992, the Legislature amended what was then Neb. Rev. Stat. § 39-669.07 (Reissue 1988) (now § 60-6,196(1)), eliminating the subsection which provided for a per se violation of the DUI statute when a person had a certain concentration of alcohol in his or her urine. Subsection 39-669.07(4) stated that it shall be unlawful to operate a motor vehicle "[w]hen such person has a concentration of ten-hundredths of one gram or more by weight of alcohol per one hundred milliliters of his or her urine." The Legislature's removal of this subsection makes it evident that it intended to remove the urine test as a way for testing for alcohol in a person's system. It will be presumed that the Legislature, in adopting an amendment, intended to make some change in the existing law and that the courts will endeavor to give some effect

thereto. *No Frills Supermarket v. Nebraska Liq. Control Comm.*, 246 Neb. 822, 523 N.W.2d 528 (1994).

We are aware that § 60-6,205(2) mentions urine testing. However, that subsection refers to persons who are arrested for refusing to submit to a chemical test of blood, breath, or urine. We have held that in the context of failing a chemical test, the purpose of an ALR is limited to protecting public health and safety. *Schindler v. Department of Motor Vehicles*, 256 Neb. 782, 593 N.W.2d 295 (1999). In the context of a refusal to submit to a chemical test, an ALR serves an additional purpose of facilitating the gathering of evidence. *Id.* Therefore, even though § 60-6,205(3) requires the results of only blood and breath tests to be forwarded to the director of the DMV, the inclusion of urine tests under § 60-6,205(2) is rational because in the context of a refusal to submit to a test, an ALR serves a purpose beyond the purpose it serves when a test is failed.

It is evident from the text of both § 60-6,205(3) and § 60-6,197(4) that the results of urine tests are not used in the ALR process. Both statutes require the tests to show an alcohol concentration in violation of § 60-6,196 (which does not have a provision of alcohol concentration in urine) before ALR procedures apply. Therefore, one cannot be subjected to the ALR provisions from the results of a urine test and that is why § 60-6,205(3) does not require that the results of a urine test be submitted to the director of the DMV. As such, § 60-6,205 does not create an unconstitutional classification between those who submit to urine tests and those who submit to blood and breath tests pursuant to that statute. Therefore, the statute does not violate the prohibition on special legislation found in Neb. Const. art. III, § 18.

## CONCLUSION

For the foregoing reasons, Kalisek's assignments of error are without merit, and the judgment of the district court is affirmed.

AFFIRMED.

GERRARD, J., concurs in the result.