BERGAN MERCY HEALTH SYSTEM, APPELLANT,
v. DONDI S. HAVEN, APPELLEE.
620 N.W. 2d 339

Filed December 15, 2000.   No. S-99-078.

John J. Jolley, Jr., of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, for appellant.

James E. Harris and Britany S. Shotkoski, of Harris, Feldman Law Offices, for appellee.

Randall L. Goyette, of Baylor, Evnen, Curtiss, Grimit & Witt, for amicus curiae Nebraska Medical Association.

Neil B. Danberg, Jr., Lyman L. Larsen, and Michael J. Leahy, of Stinson, Mag & Fizzell, for amicus curiae Nebraska Association of Hospitals and Health Systems.

Denzel R. Busick for amicus curiae Nebraska Association of Trial Attorneys.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.

## I. NATURE OF CASE

The two questions presented in this appeal are (1) whether the Nebraska medical lien statute, Neb. Rev. Stat. § 52-401 (Reissue 1998), constitutes unconstitutional special legislation under Neb. Const. art. III, § 18, and (2) whether Neb. Rev. Stat. § 25-1563.02 (Reissue 1995) exempts the proceeds of a personal injury settlement from a lien filed under § 52-401.

## II. FACTUAL BACKGROUND

The underlying facts of this case are not in dispute. Appellee Dondi S. Haven was injured in an automobile accident and was treated by appellant Bergan Mercy Health System (Bergan) from November 1 through 4, 1996, and on February 21 and June 5, 1997. There is no issue in this appeal whether the charges of $23,000 are the usual, customary, or reasonable charges as the parties have stipulated for the purposes of this motion that the charges are usual, customary, and reasonable.

Bergan's operative petition alleges that General Casualty Insurance (General Casualty) insured the tort-feasor responsible for Haven's injuries. Bergan alleges that it filed a notice of hospital lien with General Casualty, pursuant to § 52-401. Bergan further alleges that subsequent to the filing of the notice of hospital lien, Haven settled his claim against the tort-feasor for in excess of $100,000 and that Haven's attorney claimed an attorney fee of one-third of that amount.

## III. PROCEDURAL BACKGROUND

Bergan filed suit in the district court, alleging two "counts," the first of which simply prayed for judgment on the unpaid debt, and the second of which invoked the provisions of § 52-401. Haven's answer, inter alia, charged that § 52-401 was unconstitutional special legislation and was in direct conflict with § 25-1563.02, which exempts personal injury settlements from the claims of creditors.

Bergan filed a motion for partial summary judgment, which the district court sustained on March 10, 1998. Haven filed a motion to reconsider, which was sustained on July 23, 1998. In its order sustaining the motion to reconsider, the district court

determined that § 52-401 conflicted with § 25-1563.02 and that § 52-401 was unconstitutional special legislation under Neb. Const. art. III, § 18. Bergan appealed from the July 23 order, but the appeal was dismissed on September 18, 1998, by the Nebraska Court of Appeals for lack of a final, appealable order in case No. A-98-847.

Trial was had to the district court on January 15, 1999. Incorporating by reference the reasons stated in its order of July 23, 1999, the district court entered judgment in favor of Bergan on count I of its petition, finding that such services and supplies were provided at the specific request of Haven on an open account and per Haven's express agreement to pay. Haven has not cross-appealed the decision as to count I. As to count II, whether § 25-1563.02 exempts the proceeds of a personal injury settlement from a lien filed under § 52-401, the district court, giving deference to *Matter of Borgmann*, 176 B.R. 172 (Bankr. D. Neb. 1994), determined that under the exemption statute, § 25-1563.01, the mandatory terms thereof exempt personal injury or wrongful death settlements, whether in a lump sum or on a periodic basis, from any claims of creditors, which exemption includes liens under § 52-401. As to the defense of unconstitutionality of § 52-401, the district court found that the hospital lien statute, § 52-401, fails the "substantial difference" classification test and creates an arbitrary and unreasonable method of classification not based on any substantial difference or circumstances or situation between patients with a claim for their injuries against a third party and those patients who seek treatment for injuries who do not have a claim for the injuries against a third party.

Bergan filed a motion in this court to bypass the Court of Appeals, which was granted. Bergan has also properly filed a notice of a constitutional question as required by Neb. Ct. R. of Prac. 9E (rev. 2000).

## IV. ASSIGNMENTS OF ERROR

Bergan assigns, consolidated and restated, that the district court erred in determining that (1) § 52-401 is unconstitutional because it constitutes special legislation that contravenes Neb. Const. art. III, § 18, and (2) § 52-401 conflicts with

§ 25-1563.02 and that the proceeds of a personal injury settlement are exempt from the lien established by § 52-401.

## V. STANDARD OF REVIEW

■ Whether a statute is constitutional is a question of law; accordingly, the Nebraska Supreme Court is obligated to reach a conclusion independent of the decision reached by the court below. *State ex rel. Stenberg v. Moore*, 258 Neb. 738, 605 N.W.2d 440 (2000); *State ex rel. Stenberg v. Moore*, 258 Neb. 199, 602 N.W.2d 465 (1999).

■ Statutes are afforded a presumption of constitutionality, and the unconstitutionality of a statute must be clearly established before it will be declared void. *Daily v. Board of Ed. of Morrill Cty.*, 256 Neb. 73, 588 N.W.2d 813 (1999). The burden of establishing the unconstitutionality of a statute is on the one attacking its validity. *Daily v. Board of Ed. of Morrill Cty., supra; State ex rel. Shepherd v. Neb. Equal Opp. Comm.*, 251 Neb. 517, 557 N.W.2d 684 (1997).

■ Statutory interpretation is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *Phelps Cty. Bd. of Equal. v. Graf*, 258 Neb. 810, 606 N.W.2d 736 (2000); *Snyder v. Contemporary Obstetrics & Gyn.*, 258 Neb. 643, 605 N.W.2d 782 (2000).

## VI. ANALYSIS

### 1. Special Legislation

Bergan assigns that the trial court erred in determining that § 52-401 is unconstitutional special legislation. Section 52-401 provides:

> Whenever any person employs a physician, nurse, or hospital to perform professional service or services of any nature, in the treatment of or in connection with an injury, and such injured person claims damages from the party causing the injury, such physician, nurse, or hospital, as the case may be, shall have a lien upon any sum awarded the injured person in judgment or obtained by settlement or compromise on the amount due for the usual and customary charges of such physician, nurse, or hospital applicable

at the times services are performed, except that no such lien shall be valid against anyone coming under the Nebraska Workers' Compensation Act.

A legislative act constitutes special legislation, violative of Neb. Const. art. III, § 18, if (1) it creates an arbitrary and unreasonable method of classification or (2) it creates a permanently closed class. *Swanson v. State*, 249 Neb. 466, 544 N.W.2d 333 (1996); *City of Ralston v. Balka*, 247 Neb. 773, 530 N.W.2d 594 (1995). When the Legislature confers privileges on a class arbitrarily selected from a large number of persons standing in the same relation to the privileges, without reasonable distinction or substantial difference, then the statute in question has resulted in the kind of improper discrimination prohibited by the Nebraska Constitution. *Swanson v. State, supra.*

A legislative classification, in order to be valid, must be based upon some reason of public policy, some substantial difference of situation or circumstances, that would naturally suggest the justice or expediency of diverse legislation with respect to the objects to be classified. *Big John's Billiards v. Balka, ante* p. 702, 619 N.W.2d 444 (2000); *State ex rel. Douglas v. Marsh*, 207 Neb. 598, 300 N.W.2d 181 (1980). See, also, *Haman v. Marsh*, 237 Neb. 699, 467 N.W.2d 836 (1991). Classifications for the purpose of legislation must be real and not illusive; they cannot be based on distinctions without a substantial difference. *State ex rel. Douglas v. Marsh, supra.*

The general test of constitutionality with respect to prohibitions against special legislation is reasonableness of classification and uniformity of operation. Classification is proper if the special class has some reasonable distinction from other subjects of a like general character, which distinction bears some reasonable relation to the legitimate objectives and purposes of the legislation. *Kuchar v. Krings*, 248 Neb. 995, 540 N.W.2d 582 (1995); *State ex rel. Douglas v. Marsh, supra.* The question is always whether the things or persons classified by the act form by themselves a proper and legitimate class with reference to the purpose of the act. *Id.*

As Haven has conceded that § 52-401 does not create a closed class, our analysis is focused upon whether § 52-401 creates an arbitrary and unreasonable method of classification. Haven

argues, and the trial court found, that the relevant classification for the special legislation analysis is the class of persons subject to a lien under § 52-401—persons injured by tort-feasors. The Nebraska Association of Hospitals and Health Systems, as amicus curiae, argues that the appropriate classification for analysis consists of the doctors, nurses, and hospitals benefited by § 52-401.

In fact, § 52-401 must be analyzed with respect to both classifications, as it presents a unique circumstance in which two classifications are implicated. Section 52-401 provides one class (doctors, nurses, and hospitals) with privileges that may be exercised against another class (persons injured by tort-feasors). If either classification is based upon an unreasonable distinction, or if the distinction underlying either classification is not reasonably related to the objectives of the legislation, then § 52-401 is unconstitutional.

(a) Hospitals, Doctors, and Nurses

In an attempt to lessen the burden imposed on hospitals by nonpaying accident cases, the legislatures of many states have enacted statutes which give a hospital a lien upon any recovery which the patient might receive from a tort-feasor causing the injuries for which treatment is given, or upon claims which the patient may have on account of the injuries for which the hospital rendered treatment. See, generally, Annot., 16 A.L.R.5th 262 (1993 & Supp. 2000). Forty-two states and the District of Columbia have laws authorizing liens for medical care provided for injuries resulting from an accident or wrongful act. See Meta Calder, *Florida's Hospital Lien Laws*, 21 Fla. St. U. L. Rev. 341 (1993). Nebraska's statute, first enacted in 1927, is the oldest in the United States. *Id.*

The underlying goal of a hospital lien statute is to lessen the burden on hospitals and other medical providers imposed by nonpaying accident cases. *In re Guardianship & Conservatorship of Bloomquist*, 246 Neb. 711, 523 N.W.2d 352 (1994). In *Buchanan v. Beirne Lumber Company*, 197 Ark. 635, 639, 124 S.W.2d 813, 815 (1939), the Supreme Court of Arkansas noted that the Arkansas hospital lien law was "enacted for the very humane purpose of encouraging physicians, hospitals and nurses to extend their services and facilities to indigent persons

who suffer personal injuries through the negligence of another, by providing the best security available to assure compensation for services and facilities." See, also, *Hosp. Bd. of Directors of Lee v. McCray*, 456 So. 2d 936, 939 (Fla. App. 1984) (hospital lien act "is a manifestation of the legislature's concern for the public welfare in that the Hospital is assured of compensation and should not be reluctant to treat indigents").

Legislative history is unavailable for the original 1927 enactment of the predecessor to § 52-401. The Legislature addressed the intent and purposes of § 52-401 at length, however, in 1995, during a debate regarding amendment of that section. The amendment was occasioned by this court's decision in *In re Guardianship & Conservatorship of Bloomquist, supra.* In that case, this court determined that hospitals were liable for their pro rata portion of the legal expenses and costs where they sought payment out of a judgment or settlement for the amount of a lien filed pursuant to § 52-401. *Id.* The Legislature amended the statute in response to the *In re Guardianship & Conservatorship of Bloomquist* decision. See, generally, Introducer's Statement of Intent, L.B. 172, Committee on Health and Human Services, 94th Leg., 1st Sess. (February 8, 1995).

The legislative history states:

> The purposes of the lien law include the following:
> —It helps health care providers by ensuring they are paid for their services out of the proceeds of any litigation arising from a patient's injuries; and
> —It helps the patient because it provides a measure of security to the health care provider thereby diminishing or eliminating altogether the need to pursue other collection efforts.

*Id.*

The testimony provided at the committee hearing on the bill provided support for the stated objectives of the legislation. The testimony provided by representatives of hospitals and health care professionals generally established that health care providers give care to injured persons without regard to a person's ability to pay for such care and that the restriction placed on § 52-401 by *In re Guardianship & Conservatorship of Bloomquist* threatened the fiscal solvency of health care institu-

tions, particularly to the continuing ability to afford provision of emergent care to indigent injured persons. See, generally, Committee on Health and Human Services Hearing, L.B. 172, 94th Leg., 1st Sess. (February 8, 1995). The testimony also established that some health care providers, deprived of the benefit of § 52-401, would resort to immediately pursuing collection efforts against injured parties and obtaining judgments against them, rather than simply securing a lien and waiting for a judgment or settlement against the tort-feasor. *Id.*

Senator Wesely, in his remarks introducing L.B. 172 for floor debate, stated:

> But the bottom line of why we are trying to do this is to recognize that if we don't provide for the medical care providers to be compensated for the care that they provide individuals, you will have a loss of millions of dollars to hospitals and other medical providers. And then you will have a problem, I think, resulting in these hospitals so quickly and completely giving care to individuals in trauma situations and otherwise needing medical assistance. . . . [T]he bottom line is that if we don't pass this bill, we will see hospitals losing millions of dollars, and in turn I think jeopardizing the care provided by those hospitals, and particularly the trauma care provided by those hospitals . . . .

Floor Debate, 94th Leg., 1st Sess. 2958 (March 23, 1995).

The facts underlying these comments establish the reasonable basis for the distinction between doctors, nurses, and hospitals and other creditors. Unlike other creditors, doctors, nurses, and hospitals may be called upon to provide services without first ascertaining the patient's ability to pay. See, 42 U.S.C. § 1395dd (1994) (federal Emergency Medical Treatment and Active Labor Act requiring hospital emergency facilities to screen patients and stabilize emergency medical conditions before transferring or releasing patients); *Gestring v. Mary Lanning Memorial Hosp.*, 259 Neb. 905, 613 N.W.2d 440 (2000). Thus, doctors, nurses, and hospitals are unable to protect themselves from the inevitable financial effects of providing services to those who are unable to pay for these services. This is the basis for doctors', nurses', and hospitals' "reasonable distinction from other

subjects of a like general character." *Kuchar v. Krings*, 248 Neb. 995, 1001, 540 N.W.2d 582, 586 (1995).

This distinction also "bears some reasonable relation to the legitimate objectives and purposes of the legislation." *Id.* The clear public purpose of the law, as stated in the legislative history, is to protect health care providers so that they can continue to provide care, particularly trauma care, to those who require such care without regard to a patient's ability to pay. The Legislature's clear intent was to ensure that medical care remained available to indigent persons by supplying health care providers with a means for eventually securing some compensation for the potentially charitable act of providing care to an injured party who is unable to pay.

Support for this argument is found in *Campbell v. City of Lincoln*, 195 Neb. 703, 240 N.W.2d 339 (1976). In that case, the appellant argued that the Political Subdivisions Tort Claims Act was special legislation because it placed persons injured by governmental torts in a different class than those injured by private torts. *Id.* This court rejected this argument, stating:

> The act creates one single class of tort-feasors — all political subdivisions — which includes "villages, cities of all classes, counties, school districts, public power districts, and all other units of local government." The act applies equally and uniformly to all tort claims against a political subdivision. The fact that public agencies, generally speaking, differ from private persons or corporations in many respects is obvious.

*Id.* at 709, 240 N.W.2d at 342. This court further stated that "[t]he taxpaying public has an interest in seeing that prompt and thorough investigation of claims is made where a political subdivision is involved. The public does not have such an interest as to claims against private persons or corporations." *Id.* at 710, 240 N.W.2d at 343.

Similarly, in the instant case, § 52-401 creates a class of lienholders—doctors, nurses, and hospitals—and treats that class equally and uniformly. The distinction between doctors, nurses, and hospitals and other creditors is clear, as doctors, nurses, and hospitals are unlike other creditors in that they are often called upon to provide medical services to an accident victim without

first ascertaining the patient's ability to pay. Finally, it is clear that the public at large has a particular interest in encouraging and enabling doctors, nurses, and hospitals to provide care without regard to the ability to pay, where it does not have such a compelling interest in the protection of the interests of other creditors.

See, also, *Taylor v. Karrer*, 196 Neb. 581, 586, 244 N.W.2d 201, 204 (1976), *disapproved on other grounds, Jorgensen v. State Nat. Bank & Trust*, 255 Neb. 241, 583 N.W.2d 331 (1998) (2-year statute of limitations for professionals not special legislation because "[t]he situation of professional people and of those to whom they render services is substantially different from the normal situation encountered in the rendering of ordinary services and injuries sustained thereby").

The Nebraska Association of Trial Attorneys, as amicus curiae, argues that the classification of doctors, nurses, and hospitals is unconstitutional because there is no reasonable distinction between doctors, nurses, and hospitals and other creditors whose services have been necessitated by an injury such as physical therapists, home health care aides, chauffeurs, or babysitters. This argument is without merit.

As we have noted in the context of equal protection, when the Legislature seeks to inaugurate reforms in the area of economics or social welfare, it need not choose between attacking every aspect of the problem or not attacking the problem at all. *Distinctive Printing & Packaging Co. v. Cox*, 232 Neb. 846, 443 N.W.2d 566 (1989). The fact that the Legislature has not protected the interests of other persons whose services are necessitated by accidents does not preclude it from addressing the needs of doctors, nurses, and hospitals, whose services are frequently necessitated by injury accidents, and whose financial well-being is most directly affected by the inability of injured persons to pay for their care.

Nor is the purpose of the Legislature limited to protecting the interests of doctors, nurses, and hospitals. In *Prendergast v. Nelson*, 199 Neb. 97, 256 N.W.2d 657 (1977), the appellant raised special legislation and equal protection challenges to the then applicable version of the Nebraska Hospital-Medical Liability Act, Neb. Rev. Stat. §§ 44-2801 to 44-2855 (Cum. Supp. 1976). We determined that the act was constitutional, stat-

ing, "We are dealing with the fundamental right to adequate medical care," and affirming "the right of the Legislature to exercise the police power to promote the general health and welfare of the citizens of this state." 199 Neb. at 114, 356 N.W.2d at 668.

The appellant in that case also argued that the act could not be justified on the basis of the societal circumstances under which it was alleged to have been adopted. *Id.* We rejected that argument, stating:

> Defendant . . . assumes the legislation was enacted to relieve doctors or insurance companies of some of their burden. We do not accept defendant's premise. Doctors and insurance companies are able to protect themselves against financial burdens by passing the cost on to their patients. Because they were doing so, [they] created part of the problem. The Legislature deemed it necessary to exercise its police power to make available qualified medical services at reasonable prices for the Nebraska public. We find no constitutional violation of this effort.

*Id.* at 119-20, 256 N.W.2d at 671.

Similarly, in the instant case, doctors, nurses, and hospitals would be equally able to protect themselves from the effects of nonpaying accident cases by passing those costs on to other patients, and by pursuing immediate collection efforts against accident victims. The Legislature has not violated the constitution by seeking to eliminate the need for such collection efforts, thus making medical services more affordable for all citizens of Nebraska by enacting § 52-401.

### (b) Persons Injured by Tort-Feasors

The classification of those injured by tort-feasors is also constitutionally justified. The distinction between those injured by tort-feasors and injured parties generally is clear—where persons are injured by tort-feasors, the ultimate legal responsibility for the injuries sustained rests with the tort-feasor and not the injured party. Therefore, those injured by tort-feasors are substantially different from other injured parties.

The public policy underlying the statute is that doctors, nurses, and hospitals are *intended* to be compensated by any judgment or settlement reached as compensation for the injuries

sustained. It has been decided by the Legislature, for the policy reasons stated above, that doctors, nurses, and hospitals should be compensated when funds are available from the responsible party. It is reasonable to ensure that when an injured party seeks damages based upon the cost of medical services necessitated by an injury, the compensation for those services should be directed toward the providers of the services. This also serves the public interest through the financial solvency of the doctors, nurses, and hospitals, as detailed above.

We determine that Bergan's assignment of error has merit, as § 52-401 is not special legislation in allowing hospitals, doctors, and nurses to perfect a lien not allowed to other creditors, nor in limiting that lien to debtors who have been injured by tortfeasors. Haven has not argued that the statute is special legislation in providing doctors, hospitals, and nurses an exception from the "common fund" doctrine not available to other creditors, and we do not consider that question.

## 2. STATUTORY CONFLICT

Bergan assigns that the trial court erred in determining that § 52-401 conflicts with § 25-1563.02. Section 25-1563.02 provides:

(1) Except as provided in subsection (2) of this section, all proceeds and benefits, including interest earned thereon, which are paid either in a lump sum or are accruing under any structured settlement providing periodic payments, which lump-sum settlement or periodic payments are made as compensation for personal injuries or death, shall be exempt from attachment, garnishment, or other legal or equitable process and from all claims of creditors of the beneficiary or the beneficiary's surviving dependents unless a written assignment to the contrary has been obtained by the claimant.

(2) All proceeds and benefits, including interest earned thereon, which are paid for personal injuries may be garnished by a county attorney or authorized attorney pursuant to section 43-512.03 or garnished for child support as defined in section 43-1705 by an obligee as defined in section 43-1713.

The legislative history behind § 25-1563.02 indicates that it was enacted as part of a larger reform of the bankruptcy statutes. See, generally, Floor Debate, L.B. 335, Banking, Commerce, and Insurance Committee, 90th Leg., 1st Sess. (May 27, 1987). The reform was intended to close a perceived "loophole" in the bankruptcy statutes by which assets could be protected from creditors in annuities or insurance policies. *Id.* at 6354. Section 25-1563.02 was enacted in order to ensure that structured settlements of personal injury claims were not subjected to creditors' claims when the annuity loophole was closed. *Id.* The section was later amended to include lump-sum payments in addition to structured settlements. 1993 Neb. Laws, L.B. 118. The section was subsequently amended to provide that such settlements could be garnished for child support payments. 1994 Neb. Laws, L.B. 1224.

Under the trial court's resolution of the perceived conflict between §§ 25-1563.02 and 52-401, the latter statute would be rendered an almost complete nullity. The trial court's determination is, in effect, a finding that § 25-1563.02 impliedly repealed § 52-401.

Repeal by implication, however, is not favored. *Hamilton v. Hamilton*, 242 Neb. 687, 496 N.W.2d 507 (1993); *Sarpy Co. Pub. Emp. Assn. v. County of Sarpy*, 220 Neb. 431, 370 N.W.2d 495 (1985). A statute will not be considered repealed by implication unless the repugnancy between the new provision and the former statute is plain and unavoidable. See *id.* In the absence of clear legislative intent, the construction of a statute will not be adopted which has the effect of nullifying or repealing another statute. See *In re Invol. Dissolution of Battle Creek State Bank*, 254 Neb. 120, 575 N.W.2d 356 (1998). See, also, *Sarpy Co. Pub. Emp. Assn. v. County of Sarpy, supra.*

We note that while § 25-1563.02 was enacted in 1987 and last amended in 1994, § 52-401 was last amended, and quite explicitly reaffirmed by the Legislature, in 1995. If the doctrine of repeal by implication is applied, the later statute controls over the earlier statute. See *In re Invol. Dissolution of Battle Creek State Bank, supra.* The later-enacted statute is, for these purposes, the later-amended statute. See *State v. Null*, 247 Neb. 192, 526 N.W.2d 220 (1995). Consequently, to the extent that

the statutes irreconcilably conflict, § 52-401 would control over the earlier-enacted § 25-1563.02.

In this case, we can find no clear indication of an intent to repeal in the language or legislative history of either section. Consequently, we must endeavor to construct the statutes in a way which harmonizes them. *In re Invol. Dissolution of Battle Creek State Bank, supra.* See, also, *Sarpy Co. Pub. Emp. Assn. v. County of Sarpy, supra.* Moreover, we have noted that § 52-401, as a statute giving a lien, is regarded as remedial and must be so construed as to give full force and effect to the remedy, in view of the beneficial purpose contemplated. See *In re Guardianship & Conservatorship of Bloomquist*, 246 Neb. 711, 523 N.W.2d 352 (1994).

To the extent that there is conflict between two statutes on the same subject, the specific statute controls over the general statute. See *In re Invol. Dissolution of Battle Creek State Bank, supra.*

> We have stated that " '[w]here general and special provisions of statutes are in conflict, the general law yields to the special, without regard to priority of dates in enacting the same, and a special law will not be repealed by general provisions unless by express words or necessary implication . . . .' "

(Citations omitted.) *Nebraska Equal Opp. Comm. v. State Emp. Retirement Sys.*, 238 Neb. 470, 472, 471 N.W.2d 398, 400 (1991).

In this instance, § 25-1563.02 applies generally to all creditors of those who receive personal injury settlements. Section 52-401 applies to a specific subset of creditors (doctors, nurses, and hospitals) and a specific subset of debtors (those injured by tort-feasors). Therefore, § 52-401 is the more specific statute and must control where the specific conditions therein are satisfied. Bergan's assignment of error therefore has merit.

Bergan argues briefly that the statutes can be harmonized by holding that a "claim" under § 25-1563.02 does not equate to a "lien" under § 52-401. This argument is without merit. We have defined a lien as a " '*claim*, encumbrance, or charge on property for payment of some debt, obligation or duty.' " (Emphasis supplied.) *McCook Nat. Bank v. Bennett*, 248

Neb. 567, 572, 537 N.W.2d 353, 357 (1995). We have further stated that a lien is an obligation, tie, duty, or *claim* annexed to or attached upon property by the common law, equity, contract, or statute. *Dupuy v. Western State Bank*, 221 Neb. 230, 375 N.W.2d 909 (1985); *Landis Machine Co. v. Omaha Merchants Transfer Co.*, 142 Neb. 389, 6 N.W.2d 380 (1942).

## VII. CONCLUSION

We conclude that § 52-401 is not special legislation and that where §§ 52-401 and 25-1563.02 conflict, the specific provisions of § 52-401 control over the general provisions of § 25-1563.02. We reverse the judgment of the trial court and remand the cause for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

HENDRY, C.J., dissenting.

I respectfully dissent from the majority opinion insofar as it addresses Neb. Const. art. III, § 18.

Neb. Const. art. III, § 18, prohibits the Legislature from passing local or special laws that grant "to any corporation, association, or individual any special or exclusive privileges, immunity, or franchise whatever."

We have interpreted this constitutional provision to mean:

When the Legislature confers privileges on a class arbitrarily selected from a large number of persons standing in the same relation to the privileges, without reasonable distinction or substantial difference, then the statute in question has resulted in the kind of improper discrimination prohibited by the Nebraska Constitution. *Haman v. Marsh*, 237 Neb. 699, 467 N.W.2d 836 (1991). A legislative act can violate article III, § 18, in one of two ways: by creating a totally arbitrary and unreasonable method of classification, or by creating a permanently closed class.

*Swanson v. State*, 249 Neb. 466, 479, 544 N.W.2d 333, 341-42 (1996).

Further, in *Stanton v. Mattson*, 175 Neb. 767, 773, 123 N.W.2d 844, 849 (1963), we said, "The very purpose of Article III, section 18, of the Constitution, is to prevent legislative action which

grants benefits or immunities to persons or property within the general class that is made the subject of legislation."

In this appeal, Haven asserts that the medical lien statute, Neb. Rev. Stat. § 52-401 (Reissue 1998), is unconstitutional special legislation. In analyzing a special legislation claim, we must determine (1) the privilege created by the statute, (2) the particular class which is singled out to receive the privilege, (3) the persons within the general class that is made the subject of the legislation who stand in the same relation to the privilege as the particular class, and finally (4) whether the statute violates Neb. Const. art. III, § 18, either because the particular class which receives the privilege is a permanently closed class, or because the particular class has no reasonable distinction or substantial difference from the general class. See, *Swanson, supra*; *Stanton, supra*.

The privilege granted by § 52-401 is the lien which attaches against any recovery obtained by the injured person. This lien is a special privilege which exists by operation of the statute. The particular class privileged by the legislative grant is composed of physicians, nurses, and hospitals. The general class of persons "standing in the same relation to the privileges," *Swanson*, 249 Neb. at 479, 544 N.W.2d at 341, would be all professional service providers who likewise perform services of any nature in the treatment of, or in connection with, an injury. § 52-401.

Haven instead argues that the act creates two classes consisting of those injured by tort-feasors and those not injured by tort-feasors. Neither of these two purported classes, however, is granted the privilege of the lien which the statute creates. Notwithstanding, Haven contends there is in effect a privilege granted to people not injured by tort-feasors. The privilege for people in this "class" is that there is no lien which attaches due to the rendering of professional services to that person.

What Haven is asserting is the act, in its application, discriminates against people such as Haven, who are injured by tort-feasors, in the form of a lien. This, in my view, is an equal protection claim and does not address the issue of whether § 52-401 has conferred an unconstitutional privilege upon physicians, nurses, and hospitals.

The majority opinion, and Justice McCormack's dissent, analyze the classification of physicians, nurses, and hospitals in great detail. However, I respectfully suggest that such analyses are unnecessary at this time because Haven lacks standing to assert that the classification of physicians, nurses, and hospitals created by § 52-401 is unconstitutional as special legislation under Neb. Const. art. III, § 18.

To establish standing to bring a special legislation claim, the plaintiff must show that the statute is depriving him or her of a constitutionally protected right. *State v. Cushman*, 256 Neb. 335, 589 N.W.2d 533 (1999); *Kalisek v. Abramson*, 257 Neb. 517, 599 N.W.2d 834 (1999); *Metropolitan Utilities Dist. v. Twin Platte NRD*, 250 Neb. 442, 550 N.W.2d 907 (1996); *State ex rel. Dept. of Health v. Jeffrey*, 247 Neb. 100, 525 N.W.2d 193 (1994). In order to establish standing, Haven must show that his constitutional rights are being violated because the privilege granted under § 52-401 to physicians, nurses, and hospitals is being arbitrarily denied to him. This Haven cannot do.

As Justice Shanahan stated in his concurrence in *School Dist. No. 46 v. City of Bellevue*, 224 Neb. 543, 556, 400 N.W.2d 229, 238 (1987):

> Ordinarily, a challenge to constitutionality of a statute on the ground that the assailed statute denies equal rights and privileges by discriminating between persons or classes may not be made by one not belonging to the class alleged to be discriminated against. See *Griffin v. Gass*, 133 Neb. 56, 274 N.W. 193 (1937). See, also, *Ritums v. Howell*, 190 Neb. 503, 209 N.W.2d 160 (1973) (one who is not harmfully affected by a particular feature of a statute, alleged to be unconstitutional, may not urge the unconstitutionality of the statute in question).

In my view, the only persons who would have standing to assert that § 52-401 is unconstitutional special legislation are the general class of persons who stand "in the same relation to the privilege" as the particular class. Under § 52-401, the general class would include those persons who are not physicians, nurses, or hospitals, but nevertheless "perform professional services or services of any nature, in the treatment of or in connection with an injury." Only members of this general class would

have standing to claim that their constitutional rights are being violated because the privilege of a lien is given to physicians, nurses, and hospitals, but denied to them.

Accordingly, because I believe Haven lacks standing, I would withhold any opinion regarding whether § 52-401 violates Neb. Const. art III, § 18.

McCORMACK, J., dissenting.

I believe that Neb. Rev. Stat. § 52-401 (Reissue 1998) is special legislation, violative of Neb. Const. art. III, § 18. On that basis, I would affirm the judgment of the trial court.

## PART I

I agree with the majority regarding the fact that § 52-401 deals with two different classifications, and I agree with the majority's assessment of the intended purpose of the statute. I believe, however, that the classifications set forth in § 52-401 are not based upon a reasonable distinction from other subjects of a like general character and that the distinction that is present does not bear a reasonable relation to the objectives and purposes of the legislation. See *Kuchar v. Krings*, 248 Neb. 995, 540 N.W.2d 582 (1995).

The unreasonable classifications of the statute are the result of the Legislature's not choosing a legitimate objective and enacting legislation to achieve that objective. If the objective is to provide for emergency care, for instance, then the statute is too broad because it is not limited to emergency care. If the objective, however, is to provide for all health care needs, then the statute is too narrow because it does not encompass all health care providers.

Classifications for the purpose of legislation must be real and not illusive; they cannot be based on distinctions without a substantial difference. *State ex rel. Douglas v. Marsh*, 207 Neb. 598, 300 N.W.2d 181 (1980). I see no substantial difference between hospitals, doctors, and nurses and other health care providers whose services are equally necessary and valuable to persons injured by tort-feasors.

In *Stanton v. Mattson*, 175 Neb. 767, 123 N.W.2d 844 (1963), the appellant sought a declaratory judgment regarding the constitutionality of a statute allowing higher interest rates for retail

installment contracts. This court determined that the statute was special legislation, stating:

> Are there real differences in situation and circumstances that warrant making retail sellers on installment contracts a reasonable classification for fixing a higher interest rate for a loan or forbearance of money, goods, or things in action?
>
> We can see no valid reason, nor has one been pointed out to us, that warrants retail sellers to charge a rate of interest that is denied to all others.

*Id.* at 771, 123 N.W.2d at 847-48.

Similarly, in the instant case, there is no valid reason for affording hospitals, doctors, and nurses a method of securing debts that is denied other providers of necessary health care services. From the perspective of indigent injured persons, there is no reasonable distinction between the services provided by hospitals, doctors, and nurses and other necessary services of other health care providers.

## PART II

Second, I do not believe the classification of persons injured by tort-feasors forms, by itself, a proper and legitimate class with reference to the ostensible purpose of the act. See, *Kuchar v. Krings, supra*; *State ex rel. Douglas v. Marsh, supra*. While encouraging the provision of health care to indigent accident victims is a worthwhile legislative purpose, the terms of § 52-401 are not focused on that purpose.

The legislative history of § 52-401 indicates that the Legislature was concerned with the financial losses that could be sustained by hospitals, doctors, and nurses who treated indigent accident victims, absent an effective lien statute. The statute does not, however, limit the ability of hospitals, doctors, and nurses to perfect liens simply to those circumstances where indigent persons are otherwise unable to pay for services. Instead, § 52-401 allows the health care provider to perfect a lien against all persons injured by tort-feasors, regardless of whether or not the injured person has access to insurance or some other source of payment.

This creates the possibility that an injured person could have access to health insurance, yet the hospital, doctor, or nurse

could refuse the payment offered by an insurance company and choose to pursue a potentially more lucrative payment from the injured party's tort judgment. Compare Ind. Code Ann. § 32-8-26-3 (Michie 1995) (lien must be reduced by amount of medical insurance proceeds paid to hospital on behalf of patient). It is difficult to see how the purpose of encouraging health care for indigent persons can justify liens against a class of injured persons that is not limited to indigent persons.

Similarly, the legislative history indicates that one of the primary concerns of the Legislature was the financial effect of uncompensated emergency care. The statute, however, does not limit the costs that can be secured by the lien to the costs of emergent care. Compare Mo. Ann. Stat. § 430.230 (West 1992) (limiting lien to $25 per day plus necessary x-ray, laboratory, operating room, and medication services). Nebraska's statute, however, becomes overly broad and does not limit itself to the purpose as expressed in the legislative history. Under the Nebraska statute, a hospital or doctor would have a lien for services rendered 2 years after the accident, and that certainly cannot be labeled as emergent care. In Meta Calder, *Florida's Hospital Lien Laws*, 21 Fla. St. U. L. Rev. 341 (1993), there is a study on how the various states limit their lien for emergent care. This study shows:

| State: | Limitation of Lien: |
| --- | --- |
| Alabama | Limited to 1 week after receiving injury |
| California | Limited to first 72 hours of emergency; then lien attaches to 50 percent of final judgment or settlement |
| Illinois | Lien based on "ward rates" and limited to one-third of sum paid |
| Kansas | Lien may not exceed $5,000 |
| Maryland | Limited to 50 percent of recovery |
| Massachusetts | Limited to "ward charges" |
| Missouri | Limited to $25 a day and reasonable costs of necessary x ray, laboratory, operating room, and medication; limited to 50 percent of recovery after attorney fees |
| New Jersey | "Ward rates." Limited to 25 percent of total recovery |

| New York | Limited to "cost rates" for injury received up to 1 week prior to hospitalization |
|---|---|
| North Carolina | Limited to 50 percent of total amount recovered exclusive of attorney fees |
| Tennessee | Limited to one-third of recovery |
| Texas | Limited to hospital charges from first 100 days of hospitalization for person admitted to hospital within 72 hours of accident |
| Virginia | Limited to $1,500 for hospital and $300 for physician, nurse, or physical therapist |
| Washington | Limited to 25 percent of recovery |

Moreover, the testimony from the legislative history indicates that the primary complaint of health care providers was that they would incur financial losses from nonpaying accident cases. This concern, however, could be alleviated by the limited step of allowing health care providers a lien to recover the actual costs of the treatment. See, e.g., Conn. Gen. Stat. Ann. § 49-73 (West Cum. Supp. 2000) (limiting lien to the extent of the actual costs of service and materials). The purpose of protecting health care providers from financially debilitating losses could be achieved by so limiting the lien and by not allowing health care providers to potentially assert a lien for additional profit from the accident victim's tort judgment.

In short, I believe that the purpose of making health care available for indigent accident victims is not reasonably related to the overly broad classification of persons injured by tort-feasors, as all persons injured by tort-feasors are not indigent. The vast majority of people who enter hospitals have insurance and are, therefore, not indigent. The further objection that I have to § 52-401 is that it allows liens to be perfected for amounts that go beyond the expenses of the health care provider in rendering treatment for emergent care.

Hence, I respectfully dissent.