METROPOLITAN UTILITIES DISTRICT, APPELLEE, v. TWIN PLATTE NATURAL RESOURCES DISTRICT, APPELLANT, APPLICATION A-17310 OF THE METROPOLITAN UTILITIES DISTRICT.

550 N.W.2d 907

Filed June 28, 1996. No. S-95-1022.

Jess C. Nielsen, of Nielsen & Birch, for appellant.

Ronald E. Bucher for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

CAPORALE, J.

## I. STATEMENT OF CASE

The would-be objector, Twin Platte Natural Resources District, appealed to the Nebraska Court of Appeals the order of the Director of Water Resources removing Twin Platte as an objector to the application of the applicant-appellee, Metropolitan Utilities District of Omaha, for a permit to appropriate public waters from the Platte River to induce the recharge of the ground water at the utilities district's well field near La Platte, Nebraska. In so doing, Twin Platte assigned a number of errors to the director, including (1) his failure to

grant it a hearing and (2) his determination that it lacked standing. It then successfully petitioned this court for an order bypassing the Court of Appeals. Inasmuch as Twin Platte did not ask for a hearing and the director correctly determined that Twin Platte lacks standing, we affirm.

## II. SCOPE OF REVIEW

The issues attending the foregoing and controlling assignments of error present questions of law, in connection with which an appellate court is obligated to reach an independent conclusion irrespective of the determination made by the tribunal below. See *In re Interest of Rondell B.*, 249 Neb. 928, 546 N.W.2d 801 (1996).

## III. FACTS

The utilities district filed its application with the Nebraska Department of Water Resources on September 9, 1993, and subsequently corrected it on five separate occasions. The priority date for 56 of the wells was claimed to be January 1, 1970, and the priority date for the one remaining well was claimed to be January 1, 1990, the dates the wells were drilled, rather than the date of the application.

Twin Platte filed an objection to the application on August 17, 1994, claiming that it had an interest in the matter because its constituency included landowners and water users with water rights granted after January 1, 1970, and January 1, 1990.

After all other objectors either were removed or had withdrawn, the utilities district and Twin Platte filed with the director a "case stated," which provided, in pertinent part:

[The utilities district] and Twin Platte . . . hereby stipulate that the following case stated shall be and is hereby submitted . . . for consideration in this case to be binding upon said respective parties:

. . . .

2. For purposes of presenting the objections of [Twin Platte] to the application of [the utilities district] in this case, [Twin Platte] does not contest the factual case that [the utilities district] will present or has presented to the Department in support of its application; it is assumed

but not decided that [the utilities district] can and will present the required factual proof needed to support its application, that is to say that [the utilities district] has stated the factual justification for its application as required by LB301, laws of 1993.

3. [The utilities district] contends that upon satisfying the above referenced proof of facts, it is entitled to an instream flow right in the Platte River for induced recharge of the aquifer pumped by said wells, with a priority date assigned by statute which relates to the date the wells were drilled and not to the date on which application for the water right was made.

4. Within the geographical area of [Twin Platte] are irrigators who have perfected rights to divert natural flow water in the North Platte, South Platte, and Platte Rivers, and tributaries thereto, to water crops which would be senior to, and have priority to a water right granted with the priority date of the [utilities district] application; but, which would become junior to, and subservient to, a priority date assigned to existing [utilities district] wells based upon the date said wells were drilled. [Twin Platte] is authorized by statute to regulate ground water withdrawals within its district and generally to represent surface water users in its district.

5. [Twin Platte] contends that the statutory provisions which assign a priority date for [the utilities district] wells related to the date the wells were drilled to divert water from the river, being Sections 46-233, 235, 235.01, 235.02, 235.03 and 235.04, all as amended by LB301, laws of 1993, violate the protection afforded other water rights by the Nebraska and United States of America Constitutions.

6. [Twin Platte] also contends that said LB301, as compared to other statutory provisions is unconstitutionally amendatory and unworkable and unmanageable by the [department].

On August 9, 1995, the utilities district filed a motion for a determination as to Twin Platte's standing. On August 24, Twin Platte filed a "countermotion." That pleading did not

request any action on the part of the department, but, rather, provided argument on the issue of standing. Twin Platte did not request a hearing on either its so-called countermotion or the utilities district's motion.

In an order dated August 28, 1995, the director removed Twin Platte from the listing of parties in the case, finding that it did not have standing in the proceeding. Twin Platte then filed its notice of appeal to the Court of Appeals.

## IV. ANALYSIS

Before reaching the relevant assignments of error, an initial matter needs to be addressed. Twin Platte asserts in its brief that "[t]he factual and legal issues between the parties were reduced to a 'Case Stated' pursuant to [Neb. Ct. R. of Prac.] 5L, . . . filed with [the department] and is presented for this appeal." Brief for appellant at 1-2. However, the utilities district states that "the Case Stated filed with [the department] was *not* intended as a Case Stated before this Court because it clearly is not in compliance with [Neb. Ct. R. of Prac.] 5B(13) . . . ." (Emphasis in original.) Brief for appellee at 1.

Neb. Ct. R. of Prac. 5B(13) (rev. 1996) provides as follows:

> Case Stated. The parties may by agreement state the case to be presented to this court on appeal. The case stated shall briefly recite the facts out of which the questions of law arise, and also any substantial conflict in the evidence as to any fact involved. It shall separately identify and quote the rulings of the court complained of, with so much of the record as will fully show the law question involved in such ruling and the exceptions and contentions of the parties thereon. The case stated shall constitute the bill of exceptions. It must be allowed and certified by the judge who tried the case, filed with the clerk of the district court, made a part of the record of the district court as in other cases, and included therein when the transcript of the record is filed in this court.

The case stated filed with the department did not separately identify and quote the rulings about which complaint is made; indeed, no rulings had been made at the time of its filing.

Neither was the case stated certified by the director who issued the order about which complaint is made on appeal. Consequently, the case stated filed for the consideration of the department does not serve as a case stated in this court.

### 1. HEARING

Twin Platte first asserts that the director erred in failing to grant it a hearing on the issue of its standing. However, Twin Platte did not request a hearing on either the utilities district's motion to determine Twin Platte's standing or its own filing. Resolution of this assignment of error is controlled by the rule that an appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial tribunal. See, *Seevers v. Potter*, 248 Neb. 621, 537 N.W.2d 505 (1995); *Kropf v. Kropf*, 248 Neb. 614, 538 N.W.2d 496 (1995); *Farm Credit Bank v. Stute*, 248 Neb. 573, 537 N.W.2d 496 (1995). Therefore, this assignment of error is without merit.

### 2. STANDING

Twin Platte next urges that the director erred in determining that it lacked standing to object to the utilities district's application.

Before one is entitled to invoke a tribunal's jurisdiction, one must have standing to sue, which involves having some real interest in the cause of action; in other words, to have standing to sue, one must have some legal or equitable right, title, or interest in the subject matter of the controversy. *Marten v. Staab*, 249 Neb. 299, 543 N.W.2d 436 (1996); *SID No. 57 v. City of Elkhorn*, 248 Neb. 486, 536 N.W.2d 56 (1995); *City of Ralston v. Balka*, 247 Neb. 773, 530 N.W.2d 594 (1995). The purpose of a standing inquiry is to determine whether one has a legally protectable interest or right in the controversy that would benefit by the relief to be granted. *Id.* To have standing to challenge the federal or state constitutionality of a statute, the contestant must be one who is, or is about to be, adversely affected by the language in question and must show that as a consequence of the alleged unconstitutionality, the contestant is deprived of a constitutionally protected right. *State ex rel. Dept. of Health v. Jeffrey*, 247 Neb. 100, 525

N.W.2d 193 (1994); *Styskal v. Wright*, 246 Neb. 513, 519 N.W.2d 543 (1994).

Although Twin Platte does not have a water right that would be adversely affected by the utilities district's application and does not assert such a right, it nonetheless presents in its brief a number of arguments for its position that it has standing. It first contends that the case stated acknowledges as a matter of fact as well as law that it is authorized by statute to represent surface water users in its district. But as previously demonstrated, the case stated filed with the director does not serve as a case stated in this court. Moreover, whether Twin Platte is authorized by statute to represent surface water users in its district in litigation is a question of law which, as noted in part II, is to be determined independently by this court.

Second, Twin Platte urges that it has standing by virtue of the fact that some of its constituents have water rights which may be affected by the utilities district's application. In other words, Twin Platte asserts that it has the power to represent the interests of its constituents in this case, even if those constituents choose not to exercise their rights.

As a political subdivision, Twin Platte has only that power delegated to it by the Legislature. A grant of power to a political subdivision is to be strictly construed. *In re Applications A-15145, A-15146, A-15147, and A-15148*, 230 Neb. 580, 433 N.W.2d 161 (1988). A natural resources district possesses and can exercise the following powers and no others: first, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; and third, those essential to the declared objects and purposes of the district, not simply convenient, but indispensable. *Wagoner v. Central Platte Nat. Resources Dist.*, 247 Neb. 233, 526 N.W.2d 422 (1995).

In relevant part, Neb. Rev. Stat. § 2-3229 (Cum. Supp. 1994) defines the purposes of natural resources districts as being "to develop and execute, through the exercise of powers and authorities granted by law, plans, facilities, works, and programs relating to . . . (5) water supply for any beneficial uses, (6) development, management, utilization, and conservation of ground water and surface water . . . ." Thus, as the

director correctly noted, the powers of a natural resources district pertain to the development, management, utilization, and conservation of ground and surface waters. We have neither been cited to nor are we aware of any statute which grants natural resources districts the power to represent the interests of constituents in litigation. It would be stretching our powers of analogy to declare that such authority was necessarily implied in or incident to any express powers, or was indispensably essential to the declared objects and purposes of Twin Platte. See, *Wagoner, supra*; Neb. Rev. Stat. § 2-3201 et seq. (Reissue 1991 & Cum. Supp. 1994). Therefore, the fact that the water rights of the constituents of a natural resources district may be affected by an application to appropriate waters does not confer standing upon such natural resources district to object to the application.

Twin Platte also claims that it has standing because it is entitled to represent the public interest. It cites to § 2-3201 for the proposition that natural resources districts are to see to the welfare of the people, which it claims is synonymous with stating that Twin Platte represents the public interest. Section 2-3201 provides, in pertinent part:

> The Legislature hereby recognizes and declares that it is essential to the health and welfare of the people of the State of Nebraska to conserve, protect, develop, and manage the natural resources of this state. The Legislature further recognizes the significant achievements that have been made in the conservation, protection, development, and management of our natural resources and declares that the most efficient and economical method of accelerating these achievements is by creating natural resources districts encompassing all of the area of the state.

Not only is the power to represent the public interest in litigation in which a natural resources district does not otherwise have standing not expressly granted by this statute, neither is it implied in or incident to any express powers, nor indispensably essential to the declared objects and purposes of a natural resources district.

Neb. Rev. Stat. § 46-235(4)(b) (Reissue 1993) provides that the director must take into consideration certain factors in determining whether an application for an appropriation for induced ground water recharge is in the public interest; it does not state that the public interest must be represented by a particular party. Thus, Twin Platte does not have the power to represent the public interest in litigation in which it does not have standing.

Finally, Twin Platte argues that the Legislature has supplanted the common-law concept of standing by enacting Neb. Rev. Stat. § 46-233 (Reissue 1993). That section provides:

> (5) Prior to taking action on an application for induced ground water recharge, the Director of Water Resources shall publish notice of such application at the applicant's expense at least once each week for three consecutive weeks in a newspaper of general circulation in the area of the stream segment and also in a newspaper of statewide circulation. The notice shall state that any person having an interest may, in writing, object to the application. . . .
>
> (6) After the director has accepted the application . . . and published notice as required under subsection (5) of this section, the director shall, if he or she determines that a hearing is necessary, set a time and place for a public hearing on the application. . . . All interested parties shall be allowed to testify and present evidence relative to the application.

Twin Platte urges that the term "interest," as used in this section, is broader than the common-law standard of standing. While Twin Platte does not provide a proposed definition of this term, it urges that "[t]he precedent of what happens to the [utilities district] application is of vital importance to [Twin Platte] responsibilities," brief for appellant at 21; "[i]t is of vital interest to [Twin Platte] as to whether the statutes should require [the utilities district] to divert into ponds and canals, saving 'unappropriated water' for use by others upstream anywhere to Wyoming," and "[natural resources districts] have authority to impose restrictions on public water suppliers and may limit their water use to a greater degree or extent than

that permitted by [the department]; which certainly describes the interest of [natural resources districts] in this litigation," *id*. at 22; and "[t]he interest of [Twin Platte] is to see that pumping does not curtail use of the Platte River for other legitimate purposes and preserve flows for its constituency," *id*. at 26.

There simply is no merit in this argument. The term "interest" has been used by this court in defining the common-law standard of standing. See, *Marten v. Staab*, 249 Neb. 299, 543 N.W.2d 436 (1996); *SID No. 57 v. City of Elkhorn*, 248 Neb. 486, 536 N.W.2d 56 (1995); *City of Ralston v. Balka*, 247 Neb. 773, 530 N.W.2d 594 (1995). There is nothing in the language of the statute which would indicate that the Legislature intended to divert from the common-law standard of standing.

In addition, Twin Platte's broad construction of the term "interest" would lead to an absurd result. The Constitution of this state provides that "[t]he use of the water of every natural stream within the State of Nebraska is hereby dedicated to the people of the state for beneficial purposes . . . ." Neb. Const. art. XV, § 5. If mere interest in the outcome of an application was all that was necessary for standing, then every citizen of the state would have standing to object to an application. In construing a statute, it is presumed that the Legislature intended a sensible rather than an absurd result. *Professional Firefighters of Omaha v. City of Omaha*, 243 Neb. 166, 498 N.W.2d 325 (1993). Statutory language is to be given its plain and ordinary meaning, and this court will, if possible, try to avoid a construction which would lead to an absurd result. *Baker's Supermarkets v. State*, 248 Neb. 984, 540 N.W.2d 574 (1995).

Section 46-233 did not supplant the common-law standard of standing. As Twin Platte does not have standing pursuant to that standard, the second assignment of error is also without merit.

## V. JUDGMENT

The determination that Twin Platte lacks standing requires that we affirm the director's order and makes it unnecessary to consider the other assigned errors.

AFFIRMED.